```
                 IN THE UNITED STATES DISTRICT COURT

                       FOR THE DISTRICT OF OREGON


MARK W. GRIFFOR and RUTH ANN          )
GRIFFOR,                              )
                                      )
               Plaintiffs,            )   Civil No. 08-3063-HO
                                      )
                                      )
          v.                          )   ORDER
                                      )
AIRPORT CHEVROLET, INC., an Oregon    )
domestic business corporation;        )
DOES 1-2, individuals; and GENERAL    )
MOTORS ACCEPTANCE CORPORATION, a      )
foreign Delaware Corporation,         )
                                      )
               Defendants.            )
_____)
```

Plaintiffs allege Oregon RICO Act violations, Federal Truth in Lending Act violations, liability of lender as holder of "consumer paper" under ORS § 83.820 and FTC "Holder Rule" contract liability. Plaintiffs also seek injunctive relief to avoid adverse credit reports and declaratory relief that they are entitled to insurance

proceeds for damage to the vehicle they traded in to defendant Airport Chevrolet.

Defendant General Motors Acceptance Corporation (GMAC) moves to:

(1) dismiss it as a party as it is not the entity that purchased the contract of sale from defendant Airport Chevrolet and therefore not the real party in interest;

(2) dismiss plaintiffs' First Claim (ORICO claim) brought directly against it

(3) dismiss plaintiffs' Fifth Claim for derivative lender liability on the basis of alleged Truth in Lending Act violations; and

(4) dismiss plaintiffs' claims for attorney's fees against it as an assignee under plaintiffs' Fifth Claim for relief.

ALLEGATIONS

The complaint alleges as follows:

On July 11, 2007, plaintiffs entered into an installment contract with defendant Airport Chevrolet for a new 2007 Silverado. Plaintiffs traded in a used 2007 Silverado previously purchased from Airport Chevrolet and previously financed by Defendant GMAC. Plaintiffs were given a trade allowance of $40,000 subject to a lien payoff to GMAC of $33,222.40 and were given a credit for $1,733.02 for a pro-rated refund of the extended service contract on the trade-in.  The price of the new Silverado was $58,935 even though the MSRP

listed on the vehicle sticker was $55,237. Plaintiffs also agreed to purchase a $3,000 extended service contract. The total amount financed, as disclosed on the retail installment contract, for the new Silverado was $52,642. The Finance charge disclosed was $8,422.02 and the total price was $70,575.02 after financing and credits.

The contract was sold to Defendant GMAC and plaintiffs have been making the sixty $1017.74 monthly payments to GMAC.

Plaintiffs allege the cash price on the contract included "an undisclosed amount for 'negative equity' on the Plaintiffs' trade vehicle that was being financed...." The balance owed on the trade vehicle exceeded the actual value of the trade vehicle. Plaintiffs allege that the Airport Chevrolet defendants purposefully concealed the negative equity.

> The inclusion of the amount of this negative equity financing in the "Cash Price" disclosed on the retail installment contract for the purchase of the new Silverado constituted a charge that was separately imposed on the plaintiffs, as credit consumers, that would not have been imposed on the Plaintiffs, if they had been cash consumers.

Complaint (attached to (#1) at ¶ 9.

Plaintiffs further allege that the Airport Chevrolet defendants also failed to disclose that they were falsely inflating the value of plaintiffs' trade vehicle and hiding this "over-allowance" in the cash value in the cash price on the contract to allow financing of negative equity. Plaintiffs call this the "fraudulent increase in the cash price scheme."

Plaintiffs allege that if they had been made aware of the "fraudulent increase in the cash price scheme" they would not have signed the retail installment contract. Plaintiffs also allege that the Airport Chevrolet defendants

> affirmatively misrepresented to plaintiffs that all of the above described actions undertaken with regard to the value of the Plaintiffs' trade vehicle and the "Cash Price" disclosed on the retail installment contract for the purchase of the new Silverado were perfectly proper and were, in fact, necessary in order to comply with the lender requirements of the Defendant GMAC.

Complaint (attached to #1) at ¶ 11.

Plaintiffs allege that they were thus made to reasonably believe that the fraudulent increase was lawful and required as a condition of obtaining credit when it in fact was not required or lawful.

> Upon information and belief, Plaintiffs allege that, with regard to the above-described "fraudulent increase in cash sale price" scheme allegations, Defendant GMAC had knowledge of and was a co-conspirator as to such "fraudulent scheme" and the ORICO predicate acts perpetrated upon the Plaintiffs by the Defendants Airport Chevrolet ... as hereinafter alleged.

Complaint at ¶ 13.

> Plaintiffs allege they have been damaged
>
> by the total of the amount of any trade-in or other down payment made on the new Silverado, all other charges paid at the time of the signing of the retail installment contract, the amount financed under the retail installment contract, and all contractually obligated interest and other charges, less savings, if any, resulting from the transaction, in the total amount of $70,575.02.

Complaint at ¶ 15.

## DISCUSSION

A.  Proper Party

Defendant GMAC asserts that it did not purchase the contract and is not the proper party to this litigation, but, rather, that the contract was purchased by GMAC Automotive Bank, a separate legal entity.  Plaintiffs have not yet moved to add GMAC automotive Bank to this action.  The issue cannot be resolved on a motion to dismiss and requires discovery.  The motion to dismiss on this basis is denied.

B.  ORICO Claim

Defendant GMAC argues that the alleged concealed facts and misrepresentations were not apparent on the face of the contract and that if such facts were not apparent to plaintiffs, the same is true of defendant GMAC.  Accordingly, GMAC contends that plaintiffs fail to state a claim under ORICO against it.  However, the motion again relies on factual assertions not appropriate in a motion to dismiss, i.e., that the alleged facts and/or misrepresentations were not disclosed when Airport submitted the contract to GMAC.  As alleged in the complaint, GMAC had knowledge of the alleged  "fraudulent increase in the cash price scheme" and was a co-conspirator to the scheme.  Generally, courts accept all allegations as true for purposes of a motion to dismiss.

GMAC also argues that absent specific factual allegations that GMAC participated directly in and had knowledge of the alleged

5 - ORDER

misrepresentation and concealment of facts made by Airport Chevrolet, plaintiffs fail to state a claim. GMAC contends that plaintiffs cannot simply plead "on information and belief." GMAC provide no authority for this assertion. Presumably, they rely on Fed. R. Civ. P. 9(b):

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Here, although its difficult to see how the alleged acts of Airport Chevrolet constitute fraud, the time, place and the who regarding the alleged fraud are alleged. The link to knowledge on the part of GMAC is only generally alleged.

There are no facts to support the co-conspirator allegation and it is unclear if mere knowledge of fraud by someone else is sufficient here. But,

> the general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge. In such situations, plaintiffs can not be expected to have personal knowledge of the relevant facts.

Neubronner v. Millken, 6 F.3d 666, 672 (9th Cir. 1993).

Still, the exception noted above "does not nullify Rule 9(b); a plaintiff who makes allegations on information and belief must state the factual basis for the belief." Id. Plaintiffs state that they will voluntarily agree to amend their complaint to provide the factual basis for their information and belief allegations involving

fraud.  Accordingly, the motion to dismiss the ORICO claim against defendant GMAC is granted without prejudice to amend.

C.  <u>Derivative Claims for Alleged Truth in Lending Act Violations</u>

Plaintiffs allege a violation of the Truth in Lending Act (TILA) and Regulation Z and in their Fifth Claim for Relief assert derivative liability against defendant GMAC.  GMAC contends that plaintiffs fail to state a claim for relief.

GMAC argues that because plaintiffs have alleged that the contract does not disclose accurate and pertinent terms, it cannot be liable because the TILA provides that assignees are only liable for violations of TILA that are apparent on the face of the contract.  Plaintiffs offer a confusing response in which they assert that they also allege derivative claims under ORICO and the Unlawful Trade Practices Act and then state:

> Defendant GMAC's motion to dismiss Plaintiffs' Fifth Claim for Relief can only be properly granted, if at all, based upon the derivative claims of the Plaintiffs against the Defendant GMAC for alleged violations of TILA and Regulation Z by the Defendant Airport Chevrolet, Inc.

Memorandum in Response (#17) at p. 16.  This is what the motion seeks and, under 15 U.S.C. § 1641(a), actions against assignees may be maintained only if the violation is apparent on the face of the disclosure document.  Plaintiffs also argue, however, that section 1641(a) does not apply to disallow the claim because they allege GMAC had actual knowledge of the alleged TILA and Regulation Z violations

and that 15 U.S.C. § 1641(b) thus allows the claim. As noted above, plaintiffs do allege GMAC had knowledge based on information and belief without stating the factual basis for the belief. However, since plaintiffs will apparently amend the complaint to better delineate their information and belief regarding GMAC's knowledge, the motion is granted without prejudice to amend.

D. Recovery of Attorneys Fees Against GMAC under Plaintiffs' Fifth Claim

Under the FTC Holder Rule, the amount plaintiffs can recover against an assignee of a contract cannot exceed the amounts paid on the underlying contract. In addition, under ORS § 83.820(2), assignees are only liable for the amount that would be owing under the contract. This motion is only directed to the assertion of attorneys fees based on derivative liability. Plaintiffs may not assert a claim for fees under the contract language based only on derivative liability and to that extent the motion is granted. Plaintiffs' assertion that ORS § 20.096 allows for recovery fees because the contract has a fees clause is misplaced because that applies to a direct action on the contract to enforce the provision of the contract. As noted above, derivative claims are limited to the amounts paid on the contract.

## CONCLUSION

For the reasons stated above, defendant GMAC's motion to dismiss (#8) is granted in part and denied in part.

DATED this   21st   day of January, 2009.

                                               s/ Michael R. Hogan
                                        United States District Judge